# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| VICKIE DIANE HARPER, | ) |
| | ) |
|            **Plaintiff,** | ) |
| | ) |
| v. | )    Civil Action No. 7:15-CV-664 |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|            **Defendant.** | ) |

## REPORT AND RECOMMENDATION

This appeal involves the third application for social security benefits by Vickie Diane Harper ("Harper"). In this action, Harper challenges the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore ineligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Harper alleges that the Administrative Law Judge ("ALJ") erred by failing to adequately develop the record in light of Harper's lack of representation, improperly evaluating the evidence from Dr. Gardner, and relying on evidence erroneously associated with Harper's record. I conclude that the ALJ's opinion is supported by substantial evidence. Accordingly, I **RECOMMEND DENYIING** Harper's Motion for Summary Judgment (Dkt. No. 12), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 18.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Harper failed to demonstrate that she was disabled under the

1

Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Harper first filed for SSI and DIB on October 23, 2002, and this application was denied by an ALJ in October 2003. R. 61–71. Harper then filed for SSI and DIB in December 2009, and her application was denied by an ALJ in January 2012. R. 75–89. Harper's present application for SSI and DIB was filed on February 7, 2012, in which she claimed that her disability began on January 12, 2012. R. 213–224. The Commissioner denied this application at the initial and reconsideration levels of administrative review. R. 94–113, 114–147. On January 13, 2014, ALJ Joseph T. Scruton held a hearing to consider Harper's disability claim. R. 35–57. Harper was not represented by an attorney at the hearing, which included testimony from Harper and vocational expert Asheley Wells. Id.

On June 26, 2014, the ALJ entered his decision analyzing Harper's claim under the familiar five-step process,[2] denying Harper's claim for disability. R. 14–29. The ALJ found that

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform

2

Harper suffered from the severe impairments of right knee chondromalacia; common migraine disorder, partially controlled with medications; history of possible seizure disorder; generalized arthritis; asthma; major depressive disorder; unspecified anxiety disorder; and mild early onset of posttraumatic stress disorder. R. 17.

The ALJ developed a detailed RFC, finding that Harper retained the functional ability to perform less than the full range of sedentary work, but that she could engage in sedentary lifting, carrying, sitting, standing and walking such that she could stand/walk for 2 hours in a normal 8-hour workday, sit for 6 hours in a normal 8-hour workday, and lift/carry 10 pounds. R. 19. He also found that Harper requires an opportunity to alternate to a standing position from a sitting position for a few minutes approximately every 30 minutes, and that she can do no more than occasionally stoop, crouch and can never kneel or crawl. The RFC also directs that Harper should avoid hazards such as working at unprotected heights or with dangerous machinery, and that she needs to avoid exposure to excessive amounts of pulmonary/respiratory irritants. The ALJ found Harper has an unsatisfactory ability to understand, remember, and to carry out complex instructions and an unsatisfactory ability to make judgments on complex work-related decisions, but she is capable of doing so for short, simple instructions. The ALJ further found Harper retains the ability to interact satisfactorily with the public, supervisors and co-workers, and she is able to respond satisfactorily to usual work situations and to changes in a routine work setting. R. 19. The ALJ determined that Harper could not return to her past relevant work as a certified nursing assistant (R. 28), but that she could work at jobs that exist in significant

---

other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

3

numbers in the national economy, such as addresser, final assembler and film touch-up inspector. R. 29. Thus, the ALJ concluded that Harper was not disabled. Id.

Harper appealed the ALJ's decision and the Appeals Council denied her request for review on October 5, 2015 (R. 1–6), and this appeal followed.

## ANALYSIS

### Duty to Develop the Record

Harper first argues that the ALJ "failed to meet the heightened level of review required in claim[s] where the claimant is unrepresented." Pl. Br. Summ. J. p. 7. Harper waived her right to have representation at the hearing and argues the ALJ had a "heightened duty" to inquire into her condition. Id. Harper alleges that the ALJ failed to fully develop the record, leaving "remaining questions that should have been answered and clarified." Pl. Br. Summ. J. p. 7. She contends that not all records were obtained following the ALJ's request for additional treatment records after the hearing. Pl. Br. Summ. J. p. 7. Harper specifically is concerned that no treatment records from Carilion Roanoke Memorial Hospital were obtained pertaining to an October 2013 follow-up appointment regarding her seizures. Pl. Br. Summ. J. p. 7. Harper also believes that the "post-hearing acquisition of the examining source opinion from Dr. Gardner and the vocational opinion from Mr. Hileman warranted further examination by the ALJ." Pl. Br. Summ. J. p. 7. Finally, Harper maintains she had difficulty speaking during the hearing, and it may have impacted the ability for her to communicate with the ALJ. Pl. Br. Summ. J. p. 8.

It is true that the ALJ has a duty to develop the record. See Cook v. Heckler, 783 F.2d 1168, 1173–74 (4th Cir.1986). In the case of an unrepresented claimant, an ALJ has "a duty to assume a more active role in helping [the] claimant[ ] develop the record," Craig v. Chater, 76 F.3d 585, 591 (4th Cir. 1996) (quoting Sims v. Harris, 631 F.2d 26, 28), and must adhere to a

4

"heightened duty of care and responsibility." Crider v. Harris, 624 F.2d 15, 16 (4th Cir. 1980) (quoting Livingston v. Califano, 614 F.2d 342, 345 (3d Cir. 1980)) (markings omitted); Roseberry v. Colvin, No. 3:15-CV-04895, 2016 WL 1737121, at *14 (S.D.W. Va. May 2, 2016). The Fourth Circuit has explained that an ALJ should "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Marsh v. Harris, 632 F.2d 296, 299 (4th Cir. 1980) (citations and markings omitted); Roseberry, 2016 WL 1737121, at *14. An ALJ may develop the record by subpoenaing and questioning witnesses, requesting records, or arranging physical or mental examinations or tests for the claimant. See Fleming v. Barnhart, 284 F. Supp. 2d 256, 272 (D. Md. 2003); Roseberry, 2016 WL 1737121, at *14.

An ALJ's failure to adequately develop the record warrants remand where the failure results in prejudice or unfairness to the claimant. Sims, 631 F.2d at 28; Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995); Mann v. Astrue, No. 5:07-201, 2008 WL 906346, at *17 (S.D.W. Va. Mar. 31, 2008). In other words, remand is improper "unless the claimant shows that he or she was prejudiced by the ALJ's failure. To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000) (citations omitted); Roseberry, 2016 WL 1737121, at *14.

Here, the ALJ adequately developed the record. After the initial hearing, the ALJ requested and considered records related to Harper's follow-up appointment after her seizure study, and he references these records in his opinion. R. 20, 695, 703–707. In the records after the seizure study, dated October 15, 2013, Nurse Practitioner Lisa Faist reported that Harper signed out from the Epilepsy Monitoring Unit ("EMU") against medical advice, that she had no

5

prior spells, and that there was no change in her normal EEG. R. 662,703 –706. Nurse Practitioner Faist also reported that Harper requested a note "saying she is unable to work to avoid legal ramifications." R. 706. Nurse Practitioner Faist informed Harper she was unable to provide such a letter and explained that "there are many people that work with seizures." Id. Nurse Practitioner Faist also reported on October 15, 2013 that it was unknown whether Harper was having epileptiform seizures because "no events were captured the few days she was in EMU prior to signing out" against medical advice. R. 706. Nurse Practitioner Faist also noted that Harper abruptly walked out of this October 15, 2013 appointment. R. 706. Thus, Harper's argument as to the ALJ's failure to request and analyze these records lacks merit. The ALJ did consider the follow-up reports, and the records do not show that the ALJ failed to assess the functional impairments from her seizure disorder. R. 20–21, R. 25.

Harper then argues that the "post-hearing acquisition of the examining source opinion from Dr. Gardner and the vocational opinion from Mr. Hileman warranted further examination by the ALJ." Pl. Br. Summ. J. p. 7. The ALJ arranged a post-hearing consultative examination to further assess Harper's subjective complaints. R. 14. The ALJ explained that upon "receipt of the examination findings, such evidence was sent to the vocational expert for interrogatory review and opinion. All such evidence was thereafter received and proffered to the unrepresented claimant, per Agency rules and regulation (Exhibits 19F, 22E, 23E, 24E)." R. 14. The ALJ sent the consultative opinion to VE Hileman, whose opinions were substantially similar to those of VE Asheley Wells. Harper never responded to the consultative examination report or the vocational expert opinion expressed in the interrogatory answer. R. 14.

The ALJ carefully analyzed the consultative opinion of Dr. Marvin Gardner, Ph.D., dated February 20, 2014. R. 730–735. Dr. Gardner concluded that Harper's insight is poor and her

6

judgment is fair, but that she is "capable of performing simple and repetitive work tasks and maintaining regular attendance in the workplace." R. 734.  Dr. Gardner gave the opinion that Harper is able "to perform work activities on a consistent basis with no more than a moderate impairment of concentration, consistence or pace." Id.  Mr. Mark Hileman concluded that Harper could not return to her previous job as a certified nurse assistant, but she could perform jobs existing in significant numbers in the national economy, such as addresser, final assembler and film touch-up inspector. R. 307–310.

Harper does not specify why a further inquiry of Mr. Hileman would have been necessary, and does not show prejudice resulting from the ALJ's failure to follow up further with Dr. Gardner or with Mr. Hileman.  Indeed, Harper has failed to demonstrate what additional facts or opinions would result from further inquiry of Dr. Gardner or Mr. Hileman.  She merely speculates as to the beneficial nature of a further inquiry, and "[m]ere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." Binion v. Shalala, 13 F.3d 243, 246 (7th Cir. 1994); Roseberry, 2016 WL 1737121 at *15.

Finally, Harper argues she had difficulty communicating during the January 13, 2013 hearing due to a cold, and that the ALJ should have further investigated how this may have affected her case. Pl. Br. Summ. J. p. 8.  The ALJ did ask Harper to speak up during the hearing (R. 39) and the ALJ recognized Harper had a strained voice. R. 57.  A review of the hearing transcript reveals no evidence that Harper failed to comprehend any questions by the ALJ or the vocational expert or that she was unable to provide coherent testimony. R. 37–57.  Therefore, there is no evidence that Harper's condition at the time of the hearing prejudiced her claim or

affected the hearing. The ALJ fulfilled his duty to develop the record, and Harper has not
demonstrated she was prejudiced from any failure of the ALJ to do so.

## Dr. Gardner's Opinion

Harper then argues the ALJ "failed to properly evaluate the treating source opinion from
Dr. Gardner." Pl. Br. Summ. J. p. 9. Specifically, she characterizes as "grossly inaccurate" the
ALJ's conclusion as to Dr. Gardner's opinion. Id. The ALJ stated: "Dr. Gardner also found the
claimant exhibited no effort during the testing process but that she demonstrated mild to
moderate impaired computation skills and concentration, as well as poor insight and only fair
judgment." R. 27. Harper argues Dr. Gardner stated that"[s]he did not appear to be engaging in
symptom exaggeration nor making any pretense of symptoms during her interview" and "she
gave good effort on most of her informal tests of cognitive functioning with the exception of
immediate recall." R. 734. Harper believes such an error would have "logically impacted the
ALJ's decision and evaluation of credibility." Pl. Br. Summ. J. p. 9.

When making an RFC assessment, the ALJ must assess every medical opinion received
into evidence. See 20 C.F.R. § 404.1527(c). Dr. Gardner was not Harper's treating physician,
and so his opinion is not given the same controlling weight provided to treating sources. 20
C.F.R. § 404.1527(c)(2). When evaluating Dr. Gardner's opinion, the ALJ must consider the
examining relationship, the treatment relationship, the length of the treatment relationship and
the frequency of examination, the nature and extent of the treatment relationship, supportability,
consistency and specialization. See 20 C.F.R. § 404.1527(c). Dr. Gardner's medical opinion will
be considered in conjunction with the "rest of the relevant evidence." 20 C.F.R. § 404.1527(b).

A review of Dr. Gardner's opinion and record evidence supports the ALJ's
characterization of Dr. Gardner's opinion. The ALJ did state: "Dr. Gardner noted no evidence of

8

exaggeration…" R. 27. Dr. Gardner also indicated in his report that Harper "appeared to give no effort on her test of immediate recall" (R. 727) and later reported that during the immediate recall testing, she "seemed to give no effort." R. 733. It was not "grossly inaccurate" then for the ALJ to state Dr. Gardner found Harper to exhibit no effort during the testing process when he found she exhibited no effort during immediate recall testing. Further, Harper provides no support for her argument that any error would have impacted the ALJ's decision. The ALJ thoroughly discussed Dr. Gardner's report in his opinion, and found it supported by the medical evidence of record. R. 27. Thus, I find no error in the ALJ's treatment of Dr. Gardner's opinion.

### **Credibility Finding**

Finally, Harper argues the ALJ's credibility finding is not supported by substantial evidence as the ALJ referred to evidence erroneously associated with Harper's record in his decision. Pl. Br. Summ. J. p. 10–11. Specifically, the ALJ referenced July 2013 treatment records from Carilion Roanoke Orthopedic Bone and Joint, which show that she:

> [P]resented seeking treatment of increased knee pain and swelling so that she could maintain her regular activities, including cleaning house, going to the local YMCA, and taking children to various appointments. Franco Coniglione, D.O. noted evidence of knee pain, advising steroid injection therapy.

R. 26. Harper argues that "[e]ngaging in such activities could reflect an ability to successfully engage in work activity. However, a close examination of these records reveals they are treatment notes for another patient, not Plaintiff (Tr. 631–636)." Pl. Br. Summ. J. p. 10–11. Indeed, the records are for another patient. R. 631–636.

The Fourth Circuit has held that an ALJ's credibility findings are "virtually unreviewable by this court on appeal." Darvishian v. Green, 404 Fed.Appx. 822, 831 (4th Cir. 2010) (citing Bieber v. Dept. of the Army, 287 F.3d 1358, 1364 (Fed. Cir. 2002)); Salyers v. Chater, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished) (an "ALJ's credibility

9

findings ... are entitled to substantial deference"); Tammy Cole On Behalf of K.R.C. v. Colvin, No. 1:15-CV-06971, 2016 WL 5334677, at *7 (S.D.W. Va. Aug. 23, 2016), report and recommendation adopted sub nom. Cole v. Colvin, No. CV 1:15-06971, 2016 WL 5329618 (S.D.W. Va. Sept. 21, 2016). It is for the ALJ to determine the facts and resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). An ALJ though "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." Lowery v. Commissioner, Social Sec. Administration, 55 Fed.Appx. 333, 339, 2003 WL 236419, *5 (6th Cir. January 30, 2003); Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995); Salinas v. Comm'r of Soc. Sec., No. 12-11614, 2013 WL 3699781, at *7 (E.D. Mich. July 12, 2013).

In Salinas, the court found the "path of reasoning" had "been obscured by the ALJ's reliance on the treating records of another individual", holding that "[b]ecause the ALJ's rationale is based largely on the records of another individual, it is impossible to determine whether substantial evidence supports the administrative decision." 2013 WL 3699781, at *7. Harper's case is distinguishable. The ALJ here did not "largely" rely on the erroneous records when making his decision on credibility, but instead he provided a detailed discussion of the evidence of record, including Dr. Gardner's report and Harper's written report of her daily activities, explaining that both undermined her claims of disability. R. 21–27. The ALJ focused his credibility discussion on the activities Harper had reported in her function reports when discussing Harper's credibility. R. 21. The ALJ states:

> During the application process, the claimant reported a variety of regular daily and functional activities, including maintaining personal care, preparing simple meals, performing light chores, doing laundry, using public transportation, shopping for groceries, and watching television (Exhibit 6E). Yet, she also reported she stayed within her home, aside from going out for physician appointments, attending court dates, and shopping for groceries.

10

R. 21. Thus, it is clear that the ALJ did not rely on the erroneous record in his credibility determination.

Further, substantial evidence supports the ALJ's credibility finding.[3] Harper's subjective allegations of pain and limitations are not conclusive. Rather, under the two-step credibility analysis, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Harper met her burden of proving that she suffers from an underlying impairment which is reasonably expected to produce her claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ must then evaluate the intensity and persistence of the claimed symptoms and their effect upon Harper's ability to work. Id. at 594–95.

In Harper's case, the ALJ followed the required two step process. He set forth Harper's subjective complaints about the intensity, persistence and limiting effects of her symptoms in detail in the opinion and determined first that Harper's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." R. 21, see SSR 96–7p, at *1. In step two, the ALJ concluded that Harper's statements concerning the intensity, persistence and

---

[3] In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements, and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16–3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16–3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16–3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16–3p was issued long after the ALJ's consideration of Harper's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96–7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016).

However, I note that the methodology required by both SSR 16–3p and SSR 96–7p are quite similar. Under either, the ALJ is required to consider Harper's report of her own symptoms against the backdrop of the entire case record; in SSR 96–7p, this resulted in a "credibility" analysis, in SSR 16–3p, this allows the adjudicator to evaluate "consistency."

11

limiting effects of her symptoms are "not entirely credible." R. 21. In his analysis, consistent with SSR 96–7p, the ALJ determined that Harper's statements about her symptoms and limitations conflict with the objective medical evidence and other evidence in the record. R. 21–22.

Specifically, the ALJ set forth Harper's medical treatment history in detail in his opinion and stated:

> The claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the claimant's own descriptions of her activities and lifestyle, the degree of medical treatment required, discrepancies between the claimant's assertions and information in the documentary reports, the claimant's demeanor at the hearing, the medical history, the findings made on examination, the claimant's assertions concerning her ability to work, and the reports of the reviewing, treating and examining practitioners.

R. 21–22. The ALJ noted that Harper "came to the hearing alone via public transportation" and "indicated she engaged in routine household and childcare management, notwithstanding her allegations of disability due to seizures and mental symptoms." R. 21. The ALJ also reviewed Harper's work history when assessing her credibility, stating:

> A review of the claimant's earnings shows varied levels of income over the relevant period, with only five years of wages above substantial gainful activity in 1999, 2001, 2005, 2006, and 2007. Other years show historical variations in earnings that raise the question as to whether the claimant's lack of work is actually due to medical impairments (Exhibits 5D).

R. 21.

It is apparent from the decision that the ALJ reviewed with detail the medical record regarding Harper's impairments and measured the statements about the severity of her symptoms and limitations against the objective evidence of record and limited Harper's RFC accordingly. It is for the ALJ to determine the facts and resolve inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). The

ALJ's evaluation of Harper's symptoms is supported by substantial evidence, and the court will not disturb it.

The ALJ engaged in a comprehensive review of the record evidence as required by the five-step process. Substantial evidence supports the ALJ's finding of no disability. The ALJ's review demonstrated that the evidence in this disability application is consistent with the findings in Harper's prior applications. Here, the ALJ reviewed the entire record, including the additional treatment Harper received since her last application. The evidence shows that Harper's condition had not progressed to the point of rendering her disabled. Thus, substantial evidence supports the ALJ's opinion.

## **CONCLUSION**

For the reasons set forth above, I recommend that Harper's motion for summary judgment be **DENIED**, and the Commissioner's motion for summary judgment be **GRANTED**.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: February 23, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge