IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VICKIE DIANE HARPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:15-cv-00664 |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security,[1] ) | By: Elizabeth K. Dillon |
| ) | United States District Judge |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

Plaintiff Vickie Diane Harper brought this action for review of defendant Nancy A. Berryhill's (the commissioner's) final decision denying her claim for supplemental security income (SSI) and disability insurance benefits (DIB) under the Social Security Act (the Act). *See* 42 U.S.C. § 405(g) (2012) (authorizing a district court to enter judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security"). The parties filed cross-motions for summary judgment, which the court referred to United States Magistrate Judge Robert S. Ballou for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). In his report, the magistrate judge concluded that substantial evidence supported the commissioner's decision. (Dkt. No. 20.) Harper timely objected, and the commissioner filed a response to the objections. (Dkt. Nos. 21, 22.) After de novo review of the pertinent portions of the record, the report, and the filings by the parties, in conjunction with applicable law, the court agrees with, and will adopt in full, the magistrate judge's recommendation. Accordingly, defendant's motion for summary judgment will be granted, and plaintiff's motion for summary judgment will be denied.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), she is hereby substituted for Carolyn W. Colvin as defendant.

## I. BACKGROUND

The court adopts the recitation of facts and procedural background as set forth in the report. (Report 2–4, Dkt. No. 20.)

## II. DISCUSSION

### A. Standard of Review

This court's review of the administrative law judge's (ALJ) underlying decision is limited. Specifically, "[a] district court's primary function in reviewing an administrative finding of no disability is to determine whether the ALJ's decision was supported by substantial evidence." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence does not require a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 564–65 (1988); rather, it requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This is "more than a mere scintilla of evidence [and] somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Where, as here, a matter has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1), this court reviews de novo the portions of the report to which a timely objection has been made. Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); *United States v. Raddatz*, 447 U.S. 667, 673–74 (1980) (finding that de novo review of the magistrate's report and recommendation comports with due process requirements).

In order for an objection to trigger de novo review, though, it must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). *See also Page v. Lee*,

337 F.3d 411, 416 n.3 (4th Cir. 2003) ("[P]etitioner's failure to object to the magistrate judge's recommendation with the specificity required by the Rule is, standing alone, a sufficient basis upon which to affirm the judgment of the district court as to this claim."). Further, objections must respond to a specific error in the report and recommendation. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). General or conclusory objections, therefore, are not proper; they are in fact considered the equivalent of a waiver. *Id*. Likewise, an objection that merely repeats the arguments made in the briefs before the magistrate judge is a general objection and is treated as a failure to object. *Moon v. BWX Techs*, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), *aff'd*, 498 F. App'x 268 (4th Cir. 2012) (citing *Veney v. Astrue*, 539 F. Supp. 2d 841, 844–46 (W.D. Va. 2008)).

Harper raises three objections to the report, and they all concern issues raised in her brief before the magistrate judge. Indeed, she even cites to her own brief and relies on it in her briefing. (Pl.'s Obj. 1, 5.) But she also cites to specific portions of the record that she believes refute the report's conclusions, and she specifically addresses statements in the report that she believes were erroneous. Thus, the court will address her objections and apply a de novo standard of review.

**B. ALJ's Decision**

On June 26, 2014, the ALJ entered his decision analyzing Harper's claim, ultimately concluding that Harper was ineligible for benefits. In reaching his decision, the ALJ followed the five-step process found in 20 C.F.R. §§ 404.1520, 416.920 (2016)  The five-step evaluation asks the following questions, in order: (1) whether the claimant is working or participating in substantial gainful activity; (2) whether the claimant has a severe impairment of the duration required by 20 C.F.R. §§ 404.1509, 416.909; (3) whether she has a type of impairment whose

3

type, severity, and duration meets the requirements listed in the statute; (4) whether she can perform her past work, and if not, what her residual functional capacity (RFC) is; and (5) whether work exists for the RFC assessed to the claimant. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A).

In this case, Harper met the insured status requirements of the Act through December 31, 2014, and she was not working at the time of the alleged onset date of January 12, 2012, through the date of the ALJ's decision. (ALJ Decision, Administrative Record (R.) 16–17, Dkt. No. 9-1.) At step two, the ALJ found that Harper suffered from the severe impairments of right knee chondromalacia; common migraine disorder, partially controlled with medications; history of possible seizure disorder; generalized arthritis; asthma; major depressive disorder; unspecified anxiety disorder; and mild early onset of posttraumatic stress disorder. (*Id.* at 17.) The ALJ then found that Harper's impairments did not meet or medically equal any listed impairments. (*Id.*)

The ALJ then evaluated Harper's RFC, considering all of her impairments. In determining Harper's RFC, he limited her to less than the full range of sedentary work and included a number of very specific and detailed limitations to account for her numerous impairments. (*Id.* at 19.) Based on her RFC, the ALJ determined that Harper was not capable of performing past relevant work as a certified nursing assistant. (*Id.* at 27–28.) He determined, though, that considering her age, education, work experience, and RFC, Harper was capable of performing other jobs that exist in the national economy at the unskilled light level of exertion,

4

such as addresser, final assembler, and film touch-up inspector. (*Id.* at 28–29.) He therefore concluded that she was not eligible for benefits. (*Id.* at 140.) In his report, the magistrate judge concluded that substantial evidence supported the ALJ's decision. (Report 1.)

## C. Harper's Objections

Harper asserts three objections to the magistrate judge's report, all of which she raised before the magistrate judge, too. First, she argues that the ALJ failed to properly review and develop the record for Harper, who was unrepresented in the proceedings before the ALJ, especially at it pertains to a Fall 2013 visit to follow-up for a possible seizure disorder. Second, she contends that the ALJ failed to properly evaluate the evidence and, in particular, erroneously reviewed and relied on some medical records in the administrative record that belonged to a different patient. Third, she maintains that the ALJ's credibility determination was flawed due to reliance on the erroneous records and the ALJ's "misperception" of the medical opinion of Dr. Gardner. (Pl.'s Obj. 1–2, 5, Dkt. No. 21 (summarizing objections).)

In response, the commissioner characterizes Harper's objections as "essentially argu[ing] . . . that Magistrate Judge Ballou erred in not accepting the arguments in [Harper's] opening brief in support of her motion for summary judgment." (Resp. 1, Dkt. No. 22.) Thus, the commissioner's response is very brief and simply "relies upon the reasoning set forth in the [report], as well as the arguments set forth in the Commissioner's responsive brief." (Dkt. No. 22 at 1.)

The court addresses each objection in turn.

### 1. The magistrate judge correctly found that remand is not required to develop the record further.

As argued by Harper and acknowledged by the magistrate judge, where a claimant is unrepresented in administrative proceedings before the commissioner, the ALJ has "a duty to

5

assume a more active role in helping [the] claimant[] develop the record." *Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996) (citation omitted). That is, in such a case, the ALJ has a "heightened duty of care and responsibility," *Crider v. Harris*, 624 F.2d 15, 16 (4th Cir. 1980), and should be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Marsh v. Harris,* 632 F.2d 296, 299 (4th Cir. 1980) (citations and internal marks omitted). As the magistrate judge also noted, though, remand is proper where the absence of counsel "created a clear prejudice or unfairness to the claimant." *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980). Thus, as the authority cited by the magistrate judge explains, to obtain remand, a claimant must demonstrate that she "could and would have adduced evidence that might have altered the result." (Report 5 (quoting *Carey v. Apfel*, 230 F.3d 131, 132 (5th Cir. 2000) and collecting authority).)

The only evidence Harper points to that the ALJ did not obtain were certain records that she supposedly referenced during the hearing. In her objections, Harper states that she returned to Carilion Roanoke Memorial Hospital for a follow-up of her seizures in late October 2013 and those records were not obtained by the ALJ or included in the record. (Pl.'s Obj. 2 (citing R. 42).) The court has carefully reviewed that portion of the transcript and disagrees with Harper's characterization of her own testimony. (R. 41–42.) Nowhere does she say that she had any follow-up at the hospital itself, and her testimony provided a broad range of possible dates of her follow-up with Carilion neurology.

Specifically, at the hearing, Harper explained that she was admitted to Roanoke Memorial Hospital in early September to monitor her and see "how bad the seizures are." (R. 41.) She also testified that, after the hospital stay for monitoring, she followed up with her

6

"neurologist, Dr. Lisa Faist" of Carilion.[2] (*Id.*) Harper was inconsistent, however, as to when the follow-up visit with Faist occurred. She first said she saw Faist "in October," she then said it was "maybe two weeks" after the hospital visit (which would have been mid- to late-September), and she later said her "follow up visit was around late October, early November." (R. 41–42.) But she was clear that her "seizure procedure" was in early September, and she only described one follow-up visit with Faist afterward. (*See* R. 41–42.) Those follow-up notes are included in the record. (R. 703–708.)

As noted in the report, the ALJ sent a post-hearing request for records to Faist for the period of August through January 22, 2014 (Report at 5; R. 695), and the latest records he received were the notes from the October 15, 2013 follow-up visit. Nothing from Harper's testimony at the hearing indicates that there are any additional records missing. Moreover, for all the reasons described by the magistrate judge (Report at 5-6), the court agrees with the report that "Harper's argument as to the ALJ's failure to request and analyze these records lacks merit" and that "the records do not show that the ALJ failed to assess the functional impairments from her seizure disorder." (*Id.* at 6.) Harper's objection on this basis is therefore overruled.

   **2. The magistrate judge correctly found that Harper's complaints were not consistent with the entire medical record, despite the ALJ's consideration of several pages of records that did not pertain to Harper.**

Harper's next objection focuses on the ALJ's brief discussion in his decision of certain records which were erroneously associated with plaintiff's file. (Pl.'s Obj. 2–3 (discussing R. 631–38).) She contends that the ALJ's description of these records, in which he noted that they showed she could clean her house, go to the local YMCA, and take children to appointments "logically implies such records were used, at least in part, to discredit [her] allegations of

---

[2] The records obtained by the ALJ show that Lisa Faist is a family nurse practitioner, not a physician. (R. 20, 695, 703–07.)

7

disability." (Pl.'s Obj. 2.) Thus, she contends that the magistrate judge erred in finding that "it is clear that the ALJ did not rely on the erroneous record in his credibility determination." (*Id.* at 3 (quoting Report 11).)

The court has reviewed this issue de novo, but concludes that, even if the ALJ actually considered the erroneous record as part of his credibility determination—a conclusion which appears to be belied by the reasoning in his decision concerning credibility—there is nonetheless substantial evidence to support both his credibility determination and his decision in this case. There was ample other evidence upon which the ALJ relied that showed that Harper's subjective complaints and descriptions of her impairments were not consistent with the medical record as a whole.[3] (R. 20–27.) The court finds no reason to repeat the magistrate judge's thorough analysis on this issue. (Report 9–13.) Instead, upon its de novo review of the record, the court overrules Harper's objection.

### 3. The magistrate judge correctly found that the alleged mischaracterization of Dr. Gardner's report by the ALJ did not undermine the ALJ's decision.

In her third objection, Harper complains that the ALJ mischaracterized one portion of the report of Dr. Gardner, who performed a consultative psychological examination of Harper. Specifically, although the ALJ stated that Dr. Gardner had found that Harper "exhibited no effort during the testing process" (R. 27), Harper states this is a "grossly inaccurate description of this doctor's findings." (Pl.'s Obj. 5.) Instead, she points to portions of Dr. Gardner's opinion in which he states that she did not give good effort on one specific test (as opposed to all of them)

---

[3] In her objections, Harper also includes one short paragraph suggesting that the ALJ's consideration of her demeanor was cryptic because he did not indicate how her "demeanor would have had a negative impact on her credibility." (Pl.'s Obj. 4.) Again, the court's review of the commissioner's decision is for substantial evidence, and credibility is almost always the province of the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (explaining that courts "cannot make credibility determinations," but "are empowered" to review whether "substantial evidence supports the ALJ's credibility assessment"). The court is satisfied that there is substantial evidence in the record to support both the ultimate decision that Harper is not disabled and the ALJ's credibility determination, even if the exact nature of how Harper's demeanor affected her credibility was not spelled out by the ALJ.

(R. 734) and another in which Dr. Gardner opined that she did not appear to be exaggerating her symptoms (*id.*), a comment also repeated by the ALJ in his decision (R. 27). In her brief before the magistrate, she argued that the ALJ's credibility determination was "tainted by a misreading of Dr. Gardner's opinion." (Pl.'s Br. Supp. Mot. for Summ. J. 10, Dkt. No. 13.)

Critically, Harper's objection does not go to the heart of whether she is in fact disabled under the Act, but is more aimed at showing that the ALJ did not give a careful enough attention to all the details of Dr. Gardner's opinion. (Pl.'s Obj. 5 (describing this error as a "lack of review, evaluation, and consideration" of Dr. Gardner's opinion).) As explained in the magistrate judge's report, though, the ALJ discussed his credibility finding at length, and he explained the extensive information he considered, which included much more than a simple misinterpretation of Gardner's statement regarding testing effort. Furthermore, as the magistrate judge reasoned, given the totality of the ALJ's comments about Dr. Gardner's opinion (Report 8–9), "it was not 'grossly inaccurate' . . . for the ALJ to state Dr. Gardner found Harper to exhibit no effort during the testing process when he found she exhibited no effort during immediate recall testing. Further, Harper provides no support for her argument that any error would have impacted the ALJ's decision." (Report 9.) The court agrees with the report's reasoning on this issue and overrules Harper's third objection on this ground, as well.

### III. CONCLUSION

After a de novo review of the record, the court finds that the ALJ's decision is supported by substantial evidence and that the ALJ applied the correct legal standards. Accordingly, this court will overrule Harper's objections and adopt the magistrate judge's report and recommendation. The court will therefore grant the commissioner's motion for summary

9

judgment and deny Harper's motion for summary judgment.

An appropriate order will be entered.

Entered: March 21, 2017.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge